GEORGE KEIGHTLEY *et al.* Plaintiffs in Error, *vs.* KATH-
ERINE GLASS *et al.* Defendants in Error.

*Opinion filed October 24, 1916.*

1. PRACTICE—*when a party cannot contend that there was no
order of reference to the master.* A party cannot contend in the
Supreme Court that there was no reference to the master to take
proofs where no such objection appears to have been made in the
court below, where said party appeared at the taking of the testi-
mony by the master and the decree prepared by his solicitors re-
cites that the cause was referred to the master to take the proofs
and report the same and that the report was confirmed and ap-
proved by the court, and where all parties appear to have under-
stood and treated the cause as having been referred to the master
and his report is heard and considered without objection.

2. SAME—*when parties are warranted in treating a case as re-
ferred to the master.* Where an order referring a case to the mas-
ter is vacated in another order granting leave to amend the bill
and to answer the bill as amended, and concluding with the words,
"and cause referred to the master to take and report the evidence
and cause continued," the meaning and purpose of such order are
that upon filing the amendment to the bill and the answer to the
bill as amended the cause is to stand referred to the master to take
and report the evidence, and the parties are warranted in treating
the case as referred to the master.

WRIT OF ERROR to the Circuit Court of Calhoun county;
the Hon. GUY R. WILLIAMS, Judge, presiding.

ANDERSON & MATTHEWS, for plaintiffs in error.

A. CLAY WILLIAMS, W. E. WILLIAMS, and FRANK J.
DUVALL, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This case comes to this court by writ of error to review
a decree of the circuit court of Calhoun county in a parti-.
tion suit, entered at the October, 1910, term of said court.

George Keightley and J. M. Keightley filed their bill
for the partition of certain lands therein described. The bill

alleged that complainants and nine persons named as defendants to the bill were the owners in fee of the land described in the bill and which it was sought to partition. The land described in the bill was four islands in the Mississippi river, in Calhoun county. It is unnecessary to refer to any other of the islands described except Island 45, which is the only land in dispute in this litigation. That island lies in the Mississippi river on the Illinois side, in a north-westerly and southeasterly direction, and is in sections 25 and 26, township 8, south, range 4, west of the fourth principal meridian, in Calhoun county. The briefs state 48.97 acres are in section 26 and 26.34 acres in section 25. Complainants and defendants to the bill were organized but not incorporated as a hunting and fishing club, and said islands in the Mississippi river were used by the club for hunting and fishing purposes. The bill alleges complainants and defendants were the owners in fee simple of the north part of Island 45, in section 26, town 8, range 4, west, containing 48.97 acres, more or less; that the complainant George Keightley had expended upwards of $512.50 in obtaining title to all of the premises acquired by the club, and that the members of the said club were indebted to him for the sum so expended, and interest. The bill further alleged the defendants had disposed of timber cut off the property of the club and asked that an accounting be had.

Defendants answered the bill, denying that complainants owned any part of the premises described in the bill, as tenants in common or otherwise, except that complainant George Keightley claimed to own fifteen acres off the north end of Island 45, in section 26. The answer further alleged the organization of the hunting and fishing club under the name of "The Clarksville Hunting and Fishing Club," of Clarksville, Missouri; that said club was desirous of securing suitable grounds and preserves for hunting and fishing, and purchased of George Keightley, among other lands described, all of Island 45 in section 26, commonly known as

Carroll island, except fifteen acres off the north end thereof. The answer further avers that immediately after the purchase the complainant George Keightley, from and through whom they were purchased, caused the lands to be surveyed, pointed out the lines and boundaries of all of said premises and put defendants in possession, and that they have so remained in open, notorious, uninterrupted, exclusive possession of all of said lands and are now in the actual possession of same as absolute owners thereof. The answer avers that from the time of the purchase from George Keightley defendants paid him the full purchase price, $300. Defendants deny the expenditure by George Keightley of money in obtaining title to the premises, as alleged in the bill, deny defendants owe him anything on that account, deny they have sold or disposed of logs, as charged in the bill, and deny the right of complainants to an accounting.

On October 14, 1910, by leave of court, complainants amended their bill, and alleged George Keightley to be the sole owner in fee of all of Island 45, in sections 25 and 26, and that he was in possession thereof, but that defendants, without right, claimed a portion of said island, which claim constituted a cloud upon complainants' title, and the prayer of the bill was amended so as to ask that said claim be decreed to be null and void.

Defendants answered the amended bill and again denied George Keightley was the sole owner of Island 45, in sections 25 and 26, or that he was in possession thereof, or that he owned any part of said premises except fifteen acres off the north end of said Island 45. Further answering, defendants averred that for more than fifteen years before the commencement of the suit defendants had been in undisputed possession of Island 45, except fifteen acres in the north part, claiming title to the same by virtue of a contract made between complainant George Keightley and defendants, by the terms of which it was agreed that George Keightley would procure title to Island 45 from the owners

thereof and procure a deed to be made to defendants for said island, except fifteen acres off the north end thereof; that in furtherance of said agreement George Keightley, for a stipulated consideration agreed upon, procured a conveyance to be made from one Kamp to defendants, under the name and style of "The Clarksville Hunting and Fishing Club," of all of Island 45 except fifteen acres off the north end, and that under and by virtue of said agreement, defendants, with the knowledge and consent of George Keightley, entered into possession of said premises, have made valuable and lasting improvements thereon, paid all taxes and assessments and have claimed to own the same. The answer further avers that if complainant George Keightley has any kind of title to the disputed premises he has acquired it since the procurement of title under the original agreement referred to and holds it in trust for the benefit of defendants. The answer avers that there was an error made by the scrivener in drawing the deed from Kamp to defendants, in that the deed purported to convey to defendants the north part of the island, whereas, in truth and in fact, it was intended to convey, and should have conveyed, all of said Island 45 except fifteen acres off the north end.

After replication filed, proofs were taken before the master in chancery and reported to the court, where the case was tried upon the bill, answer, replication and proofs reported by the master. No decree was filed at the term at which the hearing was had, but on the first day of the May, 1912, term a decree was filed, which found that the deed from Kamp describing the property conveyed as the north part of Island 45, in section 26, was a mistake; that it was intended to convey, and the deed should have recited the conveyance of, the south part of Island 45, in section 25, containing 26.34 acres, and it was ordered that the deed be reformed in accordance with the intention of the parties to convey the south part of said island, containing 26.34 acres. The decree therefore found that complainants and defend-

ants owned said 26.34 acres off the south side of Island 45, and a partition thereof, together with other islands described, was ordered.

On the same day said decree was filed defendants to the bill for partition filed a bill making the complainants in the partition suit, together with Kamp and wife, defendants, alleging the decree was procured to be signed by the judge and entered through the fraud of one of the solicitors for the complainants in the partition suit and praying that it be vacated and set aside. The solicitors now representing the plaintiffs in error, who were the complainants in the bill for partition, were not at that time their solicitors and did not appear in the case until the suing out of this writ of error. The bill set out *in hæc verba* the bill for partition and the amendment thereto, the answer and amended answer and the decree entered in said partition suit. The bill alleged that when the partition suit was heard the court found that the members composing the Clarksville Hunting and Fishing Club owned all of Island 45 except that part west and north of the line pointed out to the club members by George Keightley; that they derived their title through the said Keightley and were put in possession thereof by him; that the line separating the club's property from other property was pointed out by said Keightley. The bill alleges the decision of the judge was announced in open court, and the then solicitors of complainants in the partition suit were directed by the court to prepare a decree in accordance with the findings announced by the court, submit the same to the solicitors for the defendants and afterwards present it to the court for his signature. The bill further alleged that one of the then solicitors for complainants in the partition suit, in disregard of the findings and instructions of the court and with intent to cheat and defraud defendants to said partition suit, prepared and submitted to the court a pretended decree and secured the signature of the judge thereto, which pretended decree was contrary to the proofs

heard on the hearing and to the findings of the court and a fraud on the rights and interests of complainants, who were defendants in the partition suit, and a fraud on the court. The bill further alleged the solicitor for complainants in the partition suit did not submit the draft of the decree to the solicitors for defendants in that suit; that neither said defendants nor their solicitors were permitted to see or know what the terms of said pretended decree were, and none of them had any knowledge of what said decree was until after it had been signed by the judge and filed in said court; that said pretended decree recites that the court found that the conveyance by Kamp and wife to the members of the Clarksville Hunting and Fishing Club was intended to convey the south part of Island 45, in section 25, containing 26.34 acres, and the deed was reformed to so read.

Defendants to the bill to impeach the partition decree answered, denying the fraud charged in procuring the decree and denying complainants were entitled to the relief prayed. Thereafter the parties entered into a stipulation that the only question involved was whether the evidence heard in the partition suit was competent and sufficient to support the decree in said suit on the question as to who owns Island 45 and what part of said island belonged to complainants and what part to defendants. It was therefore agreed that the clerk should send to the judge who heard the partition suit, all the pleadings, exhibits and evidence heard pertaining to Island 45, taken in the partition suit, and that said judge might at the next term render a decision whether the decree filed in the partition suit should stand as entered or be modified or set aside; that if the said judge should sustain said decree then the report of the commissioners appointed to make partition should be approved and a decree for sale entered and the bill to impeach the decree be dismissed. Accordingly the pleadings, proof and stipulation were sent to the judge who heard the par-

tition suit, and at the October term, 1915, the court entered a decree. The decree orders that the two cases be consolidated and heard together. It recites the hearing of the partition suit and that the court found in that case the members of the club were the owners, as tenants in common, of all of said Island 45 lying southeast of the north and south half-section line of section 26, which included all of that part of said island lying in the northeast quarter of section 26 and all the island lying in section 25; that their title was obtained by a quit-claim deed March 27, 1895, from M. A. Kamp and wife. This, as we understand it, gave to the members of the club all of the island except about fifteen acres in the north or northwest end, and that is what the club members claimed to own. The decree contains no recitals as to the wrongful or fraudulent entry of the partition decree contrary to the findings and directions of the court, but again finds the ownership of Island 45 to be the same as it is alleged the court found in the partition suit, and decrees a sale of the property by the master in chancery. The decree recites that by consent of the parties the suit to set aside the partition decree for fraud is dismissed.

It is first contended by plaintiffs in error that there was no reference to the master to take the proofs, and that the proofs taken by him and reported to the court should not be considered. Before the amendment to the bill was filed an order of reference to the master was made to take and report the proofs. When leave was granted to amend the bill the order of reference was vacated, leave to amend given and leave to defendants to answer the bill as amended in ten days, "and cause referred to the master to take and report the evidence and cause continued." This order was made October 12, 1910. Two days later the amendment to the bill was filed, and in July, 1911, the answer was filed and replication filed to the answer. Afterwards the testimony of the witnesses was heard by the master and reported

to the court. It is the contention of the plaintiffs in error that the cause was not ready to be referred until issues were joined, and that after the amendment to the answer was filed and issue joined by the answer and replication no order of reference was made, that the master had no authority to take the proof, and the court was not authorized to consider the evidence taken and reported by him. No such objection appears to have been made in the court below but the plaintiffs in error appeared at the taking of the testimony by the master, and the decree prepared by their solicitors recites that the cause was referred to the master to take the proofs and report the same, and that his report was confirmed and approved by the court. All the parties appear to have understood and treated the cause as having been referred to the master, and his report was heard and considered without objection. Such objection cannot now be interposed.

We are further of opinion the parties were warranted in treating and considering the case as referred to the master for the reason that the meaning and purpose of the order of October 12 were that upon the filing of the amendment to the bill, and the answer to the bill as amended, the cause was to stand referred to the master to take and report the evidence. That appears to have been the understanding of the court and all the parties and in our opinion was a correct interpretation of the order. The stipulation entered into in the suit to impeach the partition decree recognizes that the testimony in the partition suit was taken and reported by the master and approved by the court. It is true, the stipulation recites that the only question is whether the testimony so taken and reported by the master was competent and sufficient to sustain the decree, but it is further agreed that it shall be taken and reviewed by the court for the purpose of determining whether the decree in the partition suit should stand as entered or be modified or set aside. No objection was ever made to its competency for consider-

ation by the court on the ground that the cause had not been referred to the master, and the objection now made cannot be entertained. *Freese* v. *Glos,* 248 Ill. 280; 16 Cyc. 438.

We have examined the evidence, and in our opinion it clearly supports the finding of the decree brought up for review by this writ of error as to the ownership of Island 45. Whether the entry of a decree for partition and the dismissal of the bill filed to impeach the original partition decree were erroneous, and two or three other minor questions raised, in the view we take of the case are not proper subjects for discussion in this opinion. Evidently, we take it, for the purpose of determining whether the decree for partition filed by the solicitors for the complainants in that suit was the decree directed by the court to be prepared and filed, without going into the charges of fraud in preparing and filing said decree, the parties entered into the stipulation which we have referred to and set out in substance. It was agreed in the stipulation that the court who heard the evidence in the partition suit might review that evidence and render a decision confirming, modifying or setting aside the decree. It is not expressly stated that if the decree was found by the court not to be in accordance with its findings and the directions given for its preparation another decree for partition should be entered and the bill to impeach the original decree dismissed, but the parties and the court appear to have so understood and interpreted the stipulation, for the decree recites that the bill to impeach the original partition decree is dismissed by consent. To all intents and purposes it appears to have been contemplated by the stipulation that to avoid the controversy of a trial upon disagreeable charges in the bill to impeach the decree, the parties agreed that controversy might be settled by the court again considering the evidence taken and reported by the master, and if the original decree was not prepared in accordance with the findings of the court from the proofs and its directions for the preparation of the decree, that the

court might enter another decree in accordance with the proofs and its findings and directions upon the original hearing, instead of rendering a decree in the suit to impeach the partition suit decree. It seems entirely evident from the decree entered that the court so understood the stipulation, and there is no intimation in the record that the parties to the litigation did not so understand it. It was a consent decree and in our opinion was a just one under the proofs, and is affirmed.

*Decree affirmed.*